*[107]
 
 CARLISLE B. ROBERTS, Judge.
 

 Plaintiff, as Assessor for Polk County, Oregon, appealed to this court from defendant’s Order No. VL 77-204, issued March 25, 1977. In that order, the Department of Revenue approved the values contended by Polk County for buildings and structures of Boise Cascade Corporation’s plywood plant at Independence, Oregon, but found that the true cash value of the plant’s machinery and equipment as of the January 1, 1976, assessment date was $1,851,000, relying, for the most part, upon the appraisal submitted by Boise Cascade Corporation. Polk County has appealed the value assigned to the machinery and equipment, contending that its original assessment of $2,703,000 should be reinstated. The machinery and equipment are a part of the real property identified as Assessor’s Account No. 2184-1300 Code 13-3.
 

 Plaintiffs sole witness was an appraisal engineer for the Assessment and Appraisal Division of the Department of Revenue. His background clearly qualifies him as an expert witness, since a large portion of his duties with the department has involved the appraisal of sawmill plants and plywood plants. He prepared two appraisal reports of the subject property. In his first report, used in the Department of Revenue hearing, plaintiff’s witness estimated the true cash value of the machinery and equipment to be $2,703,000 as of January 1, 1976. He relied on the reproduction cost new, less depreciation, approach to arrive at this value. This is the value which the plaintiff assessor sought in his complaint.
 

 In preparation for this trial, plaintiffs appraiser made a second appraisal report. (Under ORS 305.435, this court may consider the value conclusion in this second report, even though it is higher than that pled by the plaintiff.) In this second report, from which he testified at trial, the plaintiff’s witness considered all three traditional approaches to value: cost, income, and market data. Although he accorded some weight
 
 *[108]
 
 to the market data and income approaches in his written report, he discarded those approaches in his final value estimate. In the court’s view, this action was reasonable since there were no comparable sales to base an estimate under the market data approach. Likewise, the income approach is unreliable under the facts of this case because of the number of adjustments and allocations required in reaching a conclusion.
 

 Plaintiffs appraiser utilized three different techniques in his cost approach to value. The first was reproduction cost new, less depreciation, in which the appraiser seeks to determine the value of a
 
 replica
 
 of the subject property as if completed just before the assessment date. Prom this value, deductions must be allowed for physical deterioration and functional obsolescence. Plaintiff’s appraiser applied this approach by obtaining information about the new cost of each item of machinery and equipment, and adding the necessary costs of engineering, freight and installation. He then estimated and deducted an amount based on his subjective conclusion of the physical deterioration and functional obsolescence inherent in the subject property from the new
 
 cost of the
 
 replica, to arrive at an indicated value for the machinery and equipment of $3,036,000.
 

 The second technique used was replacement cost new, in which there is no attempt to reproduce the subject property; rather, the intent is to provide a facility, at the least possible cost, which would result in a desirable
 
 substitute
 
 for the subject property, using current costs. By utilizing the more modem items, functional obsolescence is deemed substantially cured. However, "special functional obsolescence” (as defined in the Oregon State Tax Commission’s
 
 Industrial Appraisal Manual
 
 (1965), 55) must still be deducted. Plaintiffs appraiser applied this technique and arrived at an indicated market value for the machinery and equipment less applicable special functional obsolescence of $4,033,000.
 

 
 *[109]
 
 The third cost approach utilized by plaintiffs appraiser was the "replacement cost used” technique. This is similar to replacement cost new but substitutes
 
 used
 
 costs for new costs, where the used costs are available. The used cost data come from auction sales and dealer price lists. Plaintiffs witness testified that, in his opinion, this approach is less reliable than the other two cost techniques, because some machinery and equipment was not available on the used market. Further, he indicated that this technique is not recognized by the American Institute of Real Estate Appraisers as an acceptable tool of the appraisal profession. He used it to comply with what he described as a "judicial precept of the Oregon Supreme Court” rendered in
 
 Astoria Plywood Corp. v. Dept. of Rev.,
 
 258 Or 76, 481 P2d 58 (1971). (Pl Ex 2, at 7.) Under this method, where prices were available for the used machinery and equipment, he utilized them. Where he could find no used market price, he reviewed lists of used machinery and equipment, published by machinery dealers offering for sale various types of plywood equipment. Under this technique, the witness arrived at an indicated value for the machinery and equipment of $2,439,000.
 

 Plaintiffs witness then correlated the values indicated under each of the three cost techniques. He made a subjective determination to assign a weight of 40 percent to both the reproduction and replacement cost new techniques, and a weight of 20 percent to the replacement cost used approach. His final value estimate for the machinery and equipment was $3,315,400.
 

 The defendant Department of Revenue offered no witnesses. The intervenor, Boise Cascade Corporation, offered as its expert witness a man with an exceptional background which qualified him for his assignment. He had taken college courses in real estate appraisal and real estate law. He had long and continuing familiarity with lumber mill operations; his family had operated lumber mills and he had worked in them
 
 *[110]
 
 as a teenager; he had obtained experience in cruising timber and had managed a sawmill at one time. However, for the last 15 years, he has concentrated on appraisal work, primarily in appraising woodworking plants.
 

 The intervenor’s appraiser considered the cost, income and market data approaches in his valuation. He abandoned the income approach to value because it was impossible to isolate and measure the income of the subject property (one mill of many owned and operated by the intervenor). He likewise abandoned the market data approach because he could find no truly comparable sales.
 

 The intervenor’s appraiser considered three separate techniques under the cost approach. He rejected both the reproduction cost new and the replacement cost new techniques because he did not consider them as the best instruments with which to calculate depreciation correctly in a case such as this, where much of the machinery and equipment was more than 20 years old, and where a highly specialized and active used machinery and equipment market has been developed locally. He felt it was unrealistic to attempt to estimate present market value of used machinery and equipment by first determining the new price for these items, and then trying to apply a depreciation factor. Instead, the appraiser found and used the cost developed in the Northern Oregon marketplace of each of tiie units of machinery and equipment which comprised intervenor’s plywood plant.
 

 The appraiser testified that, under this technique, the fair market value of machinery and equipment is "the dollar amount required to assemble and install from the used equipment market a similar collection of machines and equipment comparable in age and condition, and capable of producing the equivalent of the product being produced by the subject property.” (Int Ex A, at 1.) In determining the market value of the machinery and equipment, the appraiser acquired
 
 *[111]
 
 replacement costs of all the items from the "used equipment market,” primarily from machinery and equipment dealers. He tried to find items which were of the same age and condition as the subject property. If he could not find a used item in the market of the exact model of the subject, he substituted the cost of a similar used item of another brand which was designed to fulfill the same function.
 

 Since the values he relied upon were the prices of counterparts of intervenor’s used machinery and equipment, there was no need to depreciate any of the costs. For each item of the machinery and equipment, he added to the purchase price the estimated installation and engineering costs (based on 1976 costs, but "depreciated” back to the date of original installation). Adding the separate estimated used costs of the machinery and equipment, the appraiser arrived at an indicated value, as of January 1,1976, of $1,773,143, which he rounded to $1,773,200.
 

 This court believes that the preponderance of the evidence supports the valuation approved by the defendant and sought by the intervenor. The Oregon Supreme Court has made it clear that when an active market exists for used machinery and equipment, those used costs, and not new costs less depreciation, are to be used to establish true cash value.
 
 Astoria Plywood Corp., supra; Portland Canning Co. v. Tax Com.,
 
 241 Or 109, 404 P2d 236 (1965).
 
 *
 
 Indeed,
 
 *[112]
 
 plaintiff’s appraiser recognized this "judicial precept,” and interpreted that precept to mean that where there are "prices available for used components, that have sold in the market place, * * * [replacement cost
 
 used
 
 * * *” (emphasis supplied), as opposed to replacement cost or reproduction cost new, "becomes the starting point * * *.” (PI Ex 2, at 7.) Plaintiff’s appraiser placed little reliance on the used cost approach because he was not able to match all intervenor’s equipment in the used machinery and equipment market, therefore requiring that some new costs must be substituted for the used ones. Intervenor’s witness, with his greater personal knowledge of the used machinery market, had no difficulty. Except for one item, the intervenor’s appraiser was able to find used machinery and equipment which were identical or closely similar to those used in the Independence plywood plant, available for purchase from various equipment dealers in the vicinity of the subject property. The used costs he relied upon were not "scrap” or "salvage” costs but were the costs of reconditioned items (or items which could be reconditioned), the utility of which was guaranteed by the dealers. Such guarantees, made by dealers of national reputation (as the witness testified), would not have been given to scrap or junk.
 

 The court believes the "used” machinery and equipment costs, added to the estimated freight, installation and engineering costs, as determined by intervenor’s appraiser, are the best evidence of true cash value or market value in this suit. However, intervenor’s appraiser failed to include $84,410 worth of machinery and equipment additions, included by intervenor in its real property return filed with the Polk County Assessor for the 1976-1977 tax year. This amount must be added to the appraised value of $1,773,143.
 

 The value found by the Department of Revenue in its hearing was $6,600 less than the amount determined by this court. The hearings officer excluded $6,600 from the intervenor’s appraisal, apparently because he felt the taxpayer had included its estimate
 
 *[113]
 
 of the log pond value as part of the machinery and equipment rather than classifying it under buildings and structures. A review of the evidence before this court indicates that this is not true. The $6,600 figure is not the value which intervenor’s appraiser assigned to the 15-acre pond itself. Rather, as a perusal of his appraisal report indicates, the $6,600 includes the value of various items of machinery and equipment, as well as estimated installation and engineering costs, of the "pond saw.” The $6,600 estimated cost, therefore, has not been excluded from the true cash value found for machinery and equipment.
 

 The court finds the total true cash value of the machinery and equipment as of January 1, 1976, is $1,857,600, computed as follows: Intervenor^ appraisal of M & E, $1,773,143; additions (made in 1975 and not included in appraisal), $84,410; total M & E value, $1,857,553; rounded, $1,857,600.
 

 Defendant’s Order No. VL 77-204 is affirmed as modified and the value of the machinery and equipment, as of January 1,1976, is found to be $1,857,600. The County Assessor and Tax Collector of Polk County shall amend the assessment and tax rolls for 1976-1977 with respect to the subject property to conform with this decision. If taxes have been paid by the intervenor in excess of those required by the tax roll as amended, the excess, with statutory interest thereon, shall be remitted to the intervenor as provided by ORS 311.806 and 311.812.
 

 Intervenor is awarded its costs and disbursements.
 

 *
 

 Not every type of machinery and equipment will necessarily be found to come within the purview of the cases cited. In
 
 Portland Canning Co. v. Tax Com.,
 
 241 Or 109, 404 P2d 236 (1965), the property subject to appraisal was commercial canning machinery and equipment. The court said, 241 Or at 114, 404 P2d at 238:
 

 "* * * Admittedly, it [the market for canning equipment] was a highly specialized market with which only a limited number of persons, who dealt in the business on a daily basis, were familiar. However, such market did exist and the burden is placed by statute upon the commission [now the Department of Revenue] and the assessor to use market values if they exist. * * *”
 

 These conclusions are equally applicable, in Oregon at the present time, to the plywood industry’s machinery and equipment. But the issue in a particular case may turn on the expertise of the witness. The corut is required to find for the party which presents the preponderance of the evidence. ORS 305.427.